JOSEPH HASPEL, PLLC
JOSEPH J. HASPEL, ESQ.
40 Matthew Street
Goshen, New York 10924
Phone: (845) 294-8950
Facsimile: (845) 294-3843
JHaspel@haspellaw.net
(JH-5753)

UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW JERSEY

-----------------------------------------------------------X

ANITA HYMAN and JAY HYMAN,

        Plaintiffs,

        -against-

WEST COAST HOLDINGS GROUP, INC.,
STEVEN DEAN KENNEDY
(a/k/a STEPHEN DEAN KENNEDY),
and J. MAC RUST,

        Defendants.
-----------------------------------------------------------X

HON. WILLIAM H. WALLS
**Civil Action No.10-6237(WHW)**

Madeline Cox Arleo
United States Magistrate Judge

**PLAINTIFFS' MEMORANDUM OF LAW IN
IN OPPOSITION TO MOTION TO DISMISS
FOR LACK OF JURISDICTION AND
LACK OF PROPER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................1

PRELIMINARY STATEMENT..........................................................1

STATEMENT OF FACTS....................................................................6

POINT I

DEFENDANT RUST'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT
ON THE GROUNDS OF LACK OF
PERSONAL JURISDICTION SHOULD BE DENIED................................11

POINT II

DEFENDANT RUST'S MOTION TO DISMISS
ON GROUNDS OF LACK OF PROPER VENUE
OR ALTERNATIVE REQUESTING A
A CHANGE OF VENUE SHOULD BE DENIED......................................19

CONCLUSION.....................................................................................21

# TABLE OF AUTHORITIES

RULES AND STATUTES

Fed. R. Civ. P. 12(b)...........................................................................1,19

28 USC § 1332 (a))...............................................................................6

28 USC § 1391 (a)(2)..........................................................................2, 6

CASE LAW

A.V. Imps., Inc. v. Col de Fratta, S.p.A., 171 F. Supp. 2d 369 (D.N.J. 2001)..........18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, , 105 S. Ct. 2174 (1986)..... ...1

*Calder v. Jones* 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804.......................2, 11

*Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 142 (3d Cir. N.J. 1992)..........passim

Everest Nat'l Ins. Co. v. Sutton, 2007 U.S. Dist. LEXIS 65398, 15-16
(D.N.J. Sept. 4, 2007...............................................................................12, 19

*IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265 (3d Cir. 1998)..............2, 11

Panella v. O'Brien, 2006 U.S. Dist. LEXIS 59880, 4-5...........................13,16, 17,18

*Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 31 (3d Cir.1993)..........13

VIST Fin. Corp. v. Tartaglia, 2010 U.S. Dist. LEXIS 70503, 10-12......2,11,14,15,16

## INTRODUCTION

Plaintiffs Jay Hyman ("Jay") and Anita Hyman ("Anita") (Jay and Anita collectively "Plaintiffs") , hereby submit this Memorandum of Law in opposition to the Motion to Dismiss Plaintiffs' Amended Complaint  (Exhibit A) of Defendant J. Mac Rust ("Defendant Rust")   pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(3) for lack of personal jurisdiction and lack of venue.

### PRELIMINARY STATEMENT

Defendant Rust's Motion to Dismiss Plaintiffs Amended Complaint should be denied, due to the fact, Plaintiffs' have sustained their burden  by a preponderance of the evidence that is  set forth in their affidavits and documentary evidence annexed hereto, constituting of facts sufficient to establish personal jurisdiction over Defendant Rust regarding the claims of fraud  and breach of fiduciary duty.

As a result of Plaintiffs establishing "a prima facie case in favor of personal jurisdiction", the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1986).

Defendant has not nor cannot demonstrate  "… New Jersey forum's exercise of personal jurisdiction would be unreasonable".( *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 142 (3d Cir. N.J. 1992).

Defendant Rust has not nor cannot sustain its burden in presenting a compelling case, that jurisdiction of New Jersey would be unreasonable, especially in light of the fact that Plaintiff's reside in New Jersey, the language of the documents prepared by Defendant Rust setting forth jurisdiction in New Jersey and it appears, Defendant is the

sole witness who resides in Texas. In addition, the fact that Defendant Rust who appears to have misused his escrow account with Defendant Kennedy has recently consented to participating in a bankruptcy proceeding in Pennsylvania despite his Texas residency (Exhibit J).

Moreover,  venue is proper pursuant to 28 USC § 1391 (a)(2) as a substantial part of the acts giving rise to the claim, that being Defendant Rust's fraudulent acts in providing knowingly false contracts and guarantees  to Plaintiffs in New Jersey and taking Plaintiffs' $650,000 occurred in the State of New Jersey

Plaintiffs are the unfortunate victims of the fraudulent and egregious breach of fiduciary duty  by Defendant Rust, a Texas Attorney and Defendant Steven Dean Kennedy a/k/a Stephen Dean Kennedy a/k/a Dean Kennedy ("Defendant Kennedy"), a Nevada resident and the non-existent Defendant West Coast Holdings Group, Inc. ("West Coast")  a "revoked" Nevada Corporation (Exhibit B).  Plaintiffs at all relevant times alleged in Amended Complaint are residents of the State of New Jersey.

This Court has authority to exercise personal jurisdiction over Defendant Rust, a Texas resident and a Texas Attorney who acted "…outside the forum state to cause an effect upon the …." Plaintiffs in the State of New Jersey (*Calder v. Jones* 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804; *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998)  ; *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992); *VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503, 10-12 (D.N.J. July 14, 2010)).

Plaintiffs in their Amended Complaint and in their affidavits annexed hereto as

2

well as the documentary evidence have established that (i) Plaintiffs' were harmed in New Jersey by transferring $650,000 to Defendant Rust with Plaintiffs believing the funds would be held in escrow and relying on the documents prepared by Defendant Rust that West Coast existed and Defendant Kennedy had authority to bind West Coast; (ii) Defendant Rust committed fraud and egregiously breached his fiduciary duties as escrow agent by knowingly taking Plaintiffs money from New Jersey and placing the money in oil and gas lease accounts rather than a segregated escrow account; and (iii) Defendant expressly "aimed his harm" in the State of New Jersey by preparing Notes, Guarantees and security documents to Plaintiffs in the State of New Jersey and thereafter documents were modified and resent to Anita after negotiations with Counsel specifically setting forth that jurisdiction was retained in the State of New Jersey (*IMO Industries,* 155 F.3d at 265.)

The factual allegations of Plaintiffs' Amended Complaint state claims that Defendant Rust and his Co-Defendants conduct constituted fraud, and separately Defendant Rust's conduct constituted breach of fiduciary duties, in connection with regard to separate loans made by Plaintiffs to the non-existent West Coast (Exhibit B) that were to be have been held in Defendant Rust's attorney escrow by account .

The Loan documents prepared by Defendant Rust were provided to Plaintiff's in New Jersey. The Financial Guarantees prepared by Defendant Rust set forth the jurisdiction and were to be governed by the laws of the State of New Jersey.

The personal guarantee prepared by Defendant Rust provided that Defendant Kennedy guaranteed to Jay, as Creditor, the payment of the $150,000 Note and other obligations of the non-existent West Coast prepared by Rust specifically stated "This

guarantee shall be governed by and construed in accordance with the Laws of the State of New Jersey and the laws of the United States of America applicable therein (Exhibit C).

Defendant Rust initially provided Anita a  proposed Financial Guarantee dated December 22, 2008, that provided that "any and all disputes to be handled in the jurisdiction of the Guarantor (AOI)" (Exhibit L). Jay provided this document to Plaintiffs' attorney Robert Berson who contacted Defendant Rust and Defendant Kennedy to revise this document to provide that New Jersey should be the jurisdiction regarding all claims and disputes.

Defendant Rust, modified the financial guarantee dated December 22, 2008 to specifically provide that the Jurisdiction be the State of New Jersey; "Any and all claims and disputes to be handled in the jurisdiction of the LENDER (Anita Hyman)". (Exhibit F)

That in reliance on the aforementioned documents prepared by and the misrepresentations of Defendant Rust, Jay transferred $150,000 to Defendant Rusts escrow account and Anita transferred  $500,000 to Defendant Rusts in escrow.

Anita in reliance on the aforementioned documents prepared by Defendant Rust wrote a $500,000 check to Defendant Rust that  specifically stated "escrow acct" (Exhibit G).  Anita sent the $500,000 check from New Jersey to Defendant Rust.

The $500,000 was not placed in a segregated escrow account but was instead placed in an Oil and Gas account administered by Defendant Rust and immediately disbursed in violation of Defendant Rust's fiduciary duty and in breach of contract. Defendant Rust in fact wired $17,000 to Byron Belson of Jersey City, New Jersey (Exhibit N).

The Documentary evidence provided by Defendant during discovery established that despite the fact Anita's and Jay's funds were to be held in escrow, shortly after Anita sent $500,000 from New Jersey to Defendant Rust (Exhibit G). Defendant Rust deposited the $500,000 and Defendant Rust withdrew $8,000 for his legal fees (Exhibits G, and I).

Clearly, Plaintiffs have established personal jurisdiction over Defendant Rust and that Venue has properly been placed in this Court.

Therefore, it is respectfully requested that Defendants Motion to Dismiss be denied in all respects.

## STATEMENT OF FACTS

### PLAINTIFFS' AMENDED COMPLAINT

The factual allegations of Plaintiffs' Amended Complaint (Exhibit A) state claims that Defendant Rust and his Co-Defendants conduct constituted fraud,    breach of fiduciary duties, and breach of contract in connection with regard to separate loans made by Plaintiffs to the non-existent West Coast (Exhibit B) that were to be held in escrow by Defendant Rust in an attorney's segregated escrow account (¶9, AC (Exhibit A)..

### JURISDICTION

Jurisdiction is based upon diversity of citizenship between plaintiffs and defendants and the amount in controversy, exclusive of interest and costs, is in excess of the sum of Seventy Five Thousand Dollars (28 USC § 1332 (a)) (¶7, AC (Exhibit A).

### VENUE

Venue is proper pursuant to 28 USC § 1391 (a)(2) as a substantial part of the acts giving rise to the claim occurred in the State of New Jersey (¶8, AC (Exhibit A)).

### PARTIES

Plaintiff Jay  Hyman ("Jay") at all relevant times alleged in this complaint resided at 159 Second Street, Jersey City, New Jersey (¶8, AC (Exhibit A);¶4, JH Affid1; ¶4, AH Affid2).    Plaintiff Anita Hyman ("Anita") at all relevant times alleged in this complaint  resided at 159 Second Street, Jersey City, New Jersey (Jay and Anita are collectively referred to as "Plaintiffs"). (¶1 and 2, AC (Exhibit A).

---

[1]  Jay Hyman Affidavit referred to as "JH Affid."
[2]  Anita Hyman Affidavit referred to as "AH Affid"

Defendant West Coast Holdings Group, Inc. ("West Coast"), was a Nevada Corporation.  West Coast's corporate authority was revoked by the State of Nevada. (¶3, AC (Exhibit A).

Defendant Steven Dean Kennedy, a/k/a Stephen Dean Kennedy ("Defendant Kennedy") has, upon information and belief a principal place of business in either Nevada or California.  (¶4, AC (Exhibit A).

Kennedy represented himself to be an officer of West Coast,  however, the records of the Nevada Secretary of State  does not list  Kennedy as an officer of West Coast (Exhibit B).

Defendant, J. Mac Rust ("Defendant Rust" ), is a  lawyer having his offices in Texas and residing in Texas(¶6, AC (Exhibit A)..

The Loan documents prepared by Defendant Rust were provided to Plaintiffs in New Jersey. That the Loan documents prepared by Defendant Rust specifically set forth the Plaintiffs addresses in New Jersey (Affid. Jay and Anita).

The Financial Guarantees prepared by Defendant Rust set forth the jurisdiction and laws of the State of New Jersey (Exhibits C and F).

The personal guarantee, wherein Defendant Kennedy guaranteed to Jay, as Creditor,  the payment of the $150,000 Note and other obligations of the non-existent West Coast prepared by Rust specifically stated "This guarantee shall be governed by and construed in accordance with the Laws of the State of New Jersey and the laws of the United States of America applicable therein (Exhibit C).

Defendant Rust initially provided Anita a  proposed Financial Guarantee dated December 22, 2008, that provided that "any and all disputes to be handled in the

jurisdiction of the Guarantor (AOI)" (Exhibit L). Defendant Rust after discussions with Plaintiffs' counsel, modified the financial guarantee dated December 22, 2008 (Exhibit F) to specifically provide that the Jurisdiction be the State of New Jersey; "Any and all claims and disputes to be handled in the jurisdiction of the LENDER (Anita Hyman)" (Anita Affid).

That in reliance on the aforementioned documents prepared by Defendant Rust, Jay transferred $150,000 to Defendant Rusts escrow account and Anita transferred $500,000 to Defendant Rusts in escrow. Anita's $500,000 that was transferred from New Jersey to Defendant Rust were not placed in a segregated escrow account but were instead placed in an Oil and Gas account administered by Defendant Rust and immediately disbursed in violation of Defendant Rust's fiduciary duty and in breach of contract. Defendant Rust in fact wired $17,000 to Byron Belson of Jersey City, New Jersey. (¶23 and 40, AC (Exhibit A); Jay and Anita Affid).

On December 22, 2008 entered into a separate Financial Guarantee agreement with West Coast, Anita Hyman and an alleged entity named Avalon Overseas Indemnity, LTD ("Avalon"), represented to be an "Insurance Company" as the alleged guarantor ((¶29, AC (Exhibit A); Anita Affid).

That Avalon the alleged Insurance Company purported to have its place of origin in Dominica. That Avalon does not have any license to operate as Insurance Company. Upon information and belief, Avalon is not Insurance Company. The financial guarantee agreement provided, that the alleged entity Avalon was to provide an Insurance/Surety document to guarantee the payment of the loan made by Anita to West Coast (¶31-34, AC (Exhibit A)).

That the Financial Guarantee Agreement prepared by Mac Rust provided specific conditions, " ..Surety not in force until loan proceeds are verified in segregated funds control (escrow) account.  Deposit of funds by Anita Hyman into Attorney Escrow Account (Mr. Rust) for the benefit of Mr. Kennedy, causes activation and delivery of Surety for the benefit of Anita Hyman. Surety will be delivered within fifteen (15) banking days to Mr. Hyman...." (¶35, AC (Exhibit A).

That Defendant when preparing the financial guarantee agreement represented to Anita that the funds that were to be transferred by Anita were to be placed in an Attorney's Escrow Account. (¶36, AC (Exhibit A);Anita Affid).

Defendants were aware when preparing the financial guarantee agreement that Anita would rely on the fact that the $500,000 she sent to Mac Rust would be held in a segregated escrow account for the benefit of Anita until the surety would be provided to Plaintiffs. (¶37, AC (Exhibit A); Anita Affid).

Defendants were aware when preparing the financial guarantee agreement that Avalon was not Insurance Company and could not issue a surety in the sum of $500,000.00 (¶38, AC (Exhibit A)..

Anita was induced to make this loan due to the actions and representations of the Defendants (collectively or individually) (¶40, AC (Exhibit A); Anita Affid).

That Defendant Rust and Kennedy knew when they prepared, entered into and represented the terms of the Financial Guarantee agreement that the $500,000 paid by Anita from the State of New Jersey to Defendant Rust in escrow that there was no intent to hold the money in escrow nor was the money going to be placed into a segregated

9

escrow account(¶41, AC (Exhibit A); Anita Affid).

That Defendant Rust and Kennedy knew when they prepared, entered into and represented the terms of the Financial Guarantee agreement that the $500,000 paid by Anita to Mac Rust was going to be immediately disbursed and not be held pending issuance of security, insurance policy and bond (¶42, AC (Exhibit A)).

That Plaintiffs were damaged as a result of the misrepresentations of Defendants(¶43, AC (Exhibit A); Anita Affid).

That Defendant Rust failed to deposit the $500,000 paid by Anita to Mac Rust in a segregated IOLTA attorneys trust escrow account.   Defendant Rust deposited Anita's $500,000 in an Oil and Gas Account ("O&G") and not in a segregated escrow account as required by the Financial Guarantee Agreement prepared by Mac Rust.    Defendant Rust without obtaining the requisite insurance and surety in accordance with the Financial Agreement immediately disbursed the funds in violation of escrow agreement. Defendant Rust withdrew $8,000 as his legal fees from the money that was to be held in escrow in breach of the Financial Guarantee agreement (¶44-47, AC (Exhibit A); Anita Affid).

## WITNESSES

Defendants claims that "...all parties and witnesses to this accident, other than plaintiff are residents of the States of Texas or Nevada" are simply incorrect. There are several other witnesses residing in both New Jersey and New York in addition to Jay and Anita  including Byron Belson, who resides in Jersey City, New Jersey,  Robert Mr. Berson and John Macron, both New York residents and attorneys

## POINT I

## DEFENDANT RUST'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT ON THE GROUNDS OF LACK OF PERSONAL JURISDICTION SHOULD BE DENIED

Defendant Rust's Motion to Dismiss Plaintiffs' Amended Complaint (Exhibit A) should be denied, due to the fact, Plaintiffs' have sustained their burden, by a preponderance of the evidence set forth facts sufficient to establish personal jurisdiction over Defendant Rust regarding the claims of fraud and breach of fiduciary duty, in Plaintiffs' affidavits, exhibits and the Amended Complaint,. The factual allegations of Plaintiffs' Amended Complaint states claim for fraud, and breach of fiduciary duties against Defendant Rust.

This Court has authority to exercise personal jurisdiction over Defendant Rust, a Texas resident and a Texas Attorney who acted "…outside the forum state to cause an effect upon the …." Plaintiffs in the State of New Jersey (Calder v. Jones 465 U.S. 783,

104 S. Ct. 1482, 79 L. Ed. 2d 804; *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) ; *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 148 (3d Cir. 1992);

*VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503, 10-12 (D.N.J. July 14, 2010)).

Plaintiffs in their Amended Complaint, affidavits as well as the documentary evidence that (i) Defendant Rust committed fraud and egregiously breached his fiduciary duties as escrow agent ; (ii) Plaintiffs' were harmed in New Jersey by transferring $650,000 to Defendant Rust with Plaintiffs believing the funds would be held in escrow

11

and relying on the documents prepared by Defendant Rust that West Coast existed and Defendant Kennedy had authority to bind West Coast; and (iii) Defendant expressly "aimed his harm" in the State of New Jersey by preparing Notes, Guarantees and security documents and providing them to Plaintiffs knowing they would be executed by Plaintiffs in the State of New Jersey and thereafter documents were modified and resent to Anita after negotiations with Counsel specifically stating that jurisdiction was retained in the State of New Jersey.

In *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 142 (3d Cir. N.J. 1992), the Third Circuit, vacated the District Court's dismissal for lack of in personam jurisdiction of a claim based upon misrepresentation by a law firm and held "... courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff". (see also, *Everest Nat'l Ins. Co. v. Sutton, 2007 U.S. Dist. LEXIS 65398, 15-16 (D.N.J. Sept. 4, 2007).*

"Once the defendant raises the question of personal jurisdiction," however, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Id. at 146. (see also, *VIST Fin. Corp. v. Tartaglia,* 2010 U.S. Dist. LEXIS 70503, 10-12 (D.N.J. July 14, 2010). Plaintiffs in the case at bar have met their burden establishing that they have alleged by a preponderance of evidence, personal jurisdiction in New Jersey over Defendant Rust.

The Court in *Carteret Sav. Bank, F.A.,* supra., further held that "...a stronger jurisdiction predicate could be made for an intentional tort" such as the egregious fraud of Defendant Rust. The Court reasoned that "a tortious act committed within the State constitutes a jurisdictional predicate 'consistent with due process.....Therefore, New Jersey would permit the exercise of personal jurisdiction over a nonresident defendant who committed a single tortious act, whether negligent or intentional, within New Jersey." 954 F.2d 141, 147

This Court in *Panella v. O'Brien*, 2006 U.S. Dist. LEXIS 59880, 4-5 (D.N.J. Aug. 24, 2006), in denying a motion to dismiss a complaint for repayment of loans and separate causes of action for fraud, pursuant to Fed. R. Civ. P. 12(b)(2) on grounds of lack of personal jurisdiction or in the alternative transfer to the Northern District of New York, set forth the Federal Rule of Civil Procedure 4(e), standard;.

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." See *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 31 (3d Cir.1993). New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution. See N.J. Civ. Pract. R. 4:4-4; *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir.1992); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Accordingly, the question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law. See *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). The plaintiff has the burden to prove that the defendant has purposefully availed himself of the forum state. See *Burke v. Quartey*, 969 F. Supp. 921, 924 (D.N.J. 1997).

In the most recent decision of *VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503, 10-12 (D.N.J. July 14, 2010), the Court denied a motion to dismiss by a Florida Attorney regarding claims that an out of state attorney as Defendant Rust in the case at bar conspired to interfere with the proper distribution of proceeds from a transaction.

The Court in *VIST Fin. Corp.*, supra, set forth the personal jurisdiction and "minimum contacts" standard of "specific jurisdiction" and "effects standard" in New Jersey in reliance on *Carteret Sav. Bank, F.A.*, supra.and denied Defendant's motion to dismiss;

> To determine whether personal jurisdiction exists under the due process clause, the appropriate inquiry is whether defendants have sufficient minimum contact with New Jersey such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Minimum contact requires "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). ( 2010 U.S. Dist. LEXIS 70503, 10-11)

> ...A defendant may be subjected to specific jurisdiction "when the cause of action arises from the defendant's forum related activities, such that the defendant should reasonably anticipate being haled into court there." *Vetrotex*, 75 F.3d at 151. Accordingly, "[s]pecific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King, 471 U.S. at 472). Conduct giving rise to specific jurisdiction, then, must be tied to the particular claim asserted.

> Alternatively, in torts cases, courts may also apply the "effects test" articulated by the Supreme Court in Calder v. Jones to establish jurisdiction. 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); see IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir.

1998) [*13] (adopting Calder "effects" test in a tortious interference case). "Under the effects test, a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992). The Third Circuit has developed three prongs for the Calder "effects test": (1) the defendant must have committed an intentional tort; (2) the plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; (3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of tortious activity. See IMO Industries, 155 F.3d at 265.

In the case at bar, Defendant Rust and his co-Defendant Kennedy had  contact with the State of New Jersey, by Defendant Rust by delivering the fraudulent Notes and guarantee documents to Plaintiffs causing Plaintiffs to transfer to Defendant Rust the sum of $650,000 to Defendant Rust and Defendant Kennedy visiting Plaintiffs at their home in New Jersey. Defendant Rust failed to maintain a segregated escrow account and in fact immediately disbursed the proceeds from an Oil and Gas Account held by Defendant Rust, transferring some of the money back to a Mr. Byron Belson in the State of New Jersey.

The Court in *VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503, 10-12 (D.N.J. July 14, 2010) specifically held as this Court should in the case at bar have a "zero tolerance" with respect to lawyers mismanaging trust funds as Defendant Rust in the case at bar;

> The proper management of client trust funds is a fundamental duty for all legal professionals. See In re Cavuto. 160 N.J. 185, 195-96, 733 A.2d 1174 (1999) (describing the zero-tolerance approach that courts take with attorneys' actions relating to client funds).

In *VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503, 10-12 (D.N.J. July 14, 2010), the Court cited     *Eaton Corp. v. Maslym Holding Co., 929 F. Supp. 792, 798 (D.N.J. 1996)* that held , "[C]communications [*24] directed into New Jersey go a long way toward establishing minim mum Contacts." And

*Synergy, Inc. v. Manama Textile Mills, W.L.L., 2008 U.S. Dist. LEXIS 12791, at *28 (D.N.J. Feb. 20, 2008);Kultur Int'l Films v. Covent Garden Pioneer, FSP., 860 F. Supp. 1055, 1062 (D.N.J. 1994)* "finding that minimum contacts existed based upon phone calls, telefaxes, and letters sent in connection with negotiations and an agreement".

This Court in *Panella v. O'Brien*, 2006 U.S. Dist. LEXIS 59880, 4-5 (D.N.J. Aug. 24, 2006), in denying  a motion to dismiss complaint for repayment of loans and separate causes of action for fraud, pursuant to Fed. R. Civ. P. 12(b)(2) on grounds of lack of personal jurisdiction or in the alternative transfer to the Northern District of New York, set forth the Federal Rule of Civil Procedure 4(e), standard;.

> Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." See *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 31 (3d Cir.1993). New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution. See N.J. Civ. Pract. R. 4:4-4; *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir.1992); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Accordingly, the question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law. See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990).

> The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).  The plaintiff has the burden to prove that the defendant has

purposefully availed himself of the forum state. See *Burke v. Quartey*, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that the defendant has purposefully availed itself to the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state. Personal jurisdiction pursuant to such contacts is known as specific jurisdiction. Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum. See Helicopteros Nacionales de Colombia. S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); Dollar Sav. Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984). A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 257 U.S. at 253. In assessing the sufficiency  of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation." Keeton v. Hustler, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). Otherwise stated, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988).

Clearly, in the case at bar, Plaintiff has established by a preponderance of evidence that jurisdiction over Defendant Rust and his co-defendants arises out of their fraudulent conduct in the State of New Jersey.  Furthermore, in *Panella , supra. ,* the loan documents as in the case at bar contained "forum-selection provisions" (Exhibits C and F; see Anita Affid and Jay Affid)  and held;

"Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process."Burger King, 471 U.S. at 473 (internal citation omitted). The choice of law provision  gave defendants reasonable notice of being haled into a New Jersey Court and defendants should have foreseen that they might have to defend their conduct in New Jersey.

17

The Court in *Carteret Sav. Bank, F.A.*, supra., held that once the Plaintiff has made out its "prima facie" case for personal jurisdiction as Plaintiffs have in the case at bar, the burden shifts to the Defendant;

> Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1986). In this regard, we are instructed to evaluate:
>
> "the burden on the defendant,"   "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." 954 F.2d 141, 150

In the case at bar, Defendant Rust has not nor cannot sustain its burden in presenting a compelling case, that jurisdiction of New Jersey would be unreasonable, especially in light of the fact that Plaintiff's reside in New Jersey, the language of the documents prepared by Defendant Rust setting forth jurisdiction in New Jersey and it appears, Defendant is the sole witness who resides in Texas. In addition, the fact that Defendant Rust who appears to have misused his escrow account with Defendant Kennedy has recently consented to participating in a bankruptcy proceeding in Pennsylvania despite his Texas residency (Exhibit J). (see also, *Panella v. O'Brien*, 2006 U.S. Dist. LEXIS 59880, 4-5 (D.N.J. Aug. 24, 2006))

In *A.V. Imps., Inc. v. Col de Fratta, S.p.A., 171 F. Supp. 2d 369 (D.N.J. 2001)* mistakenly relied upon by Defendant Rust, District Court denied Defendant's motion to

dismiss and found jurisdiction to exist and held " Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state."

## POINT II

### DEFENDANT RUST'S MOTION TO DISMISS ON GROUNDS OF LACK OF PROPER VENUE OR ALTERNATIVE REQUESTING A A CHANGE OF VENUE SHOULD BE DENIED

Defendant Rusts motion to dismiss for lack of proper venue Fed. R. Civ. P. 12(b)(3) or in the alternative to transfer venue pursuant to 28 USC 1404 should be denied. (28 U.S.C. § 1391(a); *Everest Nat'l Ins. Co. v. Sutton, 2007 U.S. Dist. LEXIS 65398, 15-16 (D.N.J. Sept. 4, 2007)).*

28 U.S.C. § 1391(a)(2) provides that venue is proper in "..a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated..."

In *Everest Nat'l Ins. Co. v. Sutton, 2007 U.S. Dist. LEXIS 65398, 15-16 (D.N.J. Sept. 4, 2007)),* the Court held to determine if venue is proper 28 U.S.C. § 1391(a)(2), "...courts consider three factors: "(1) the place of injury; (2) the weight of contacts; and (3) whether a substantial part of the events giving rise to the claim occurred in the district." *Tischio v. Bontex, Inc.,* 16 F. Supp. 2d 511, 516 (D.N.J. 1998). The Court in *Everest Nat'l Ins. Co,* supra., found proper venue, where the fraud occurred in New Jersey as in the case at bar.

## <u>CONCLUSION</u>

For the reasons stated herein, this Court should deny Defendants Motion to Dismiss

Dated: Goshen, New York
        March 12, 2012


                            Respectfully submitted


                            **JOSEPH HASPEL, PLLC**

                            **By:** _____
                             **JOSEPH J. HASPEL, ESQ.**(JH-5753)
                            40 Matthew Street
                            Goshen, New York  10924
                            Phone: (845) 294-8950

20